## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT WINCHESTER

| | |
|---|---|
| PATRICIA ANN SIMMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 4:17-cv-15-TWP-CHS |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I.    Introduction

Plaintiff seeks judicial review pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) of the denial by the Commissioner of the Social Security Administration (SSA) of her application for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-434.  Plaintiff asserts the administrative law judge (ALJ) failed to give proper weight to Plaintiff's medical providers and failed to properly evaluate her subjective complaints and credibility.  For the reasons stated herein, Plaintiff's Motion for Summary Judgment [Doc. 14] shall be **DENIED**; the Commissioner's Motion for Summary Judgment [Doc. 17] shall be **GRANTED**; and the decision of the Commissioner shall be **AFFIRMED**.  Judgment in favor of the Commissioner shall be entered.

## II.    Background

### A.  Procedural History

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-434 (Tr. 177).  Plaintiff's claim was denied and she requested a hearing before an administrative law judge (Tr. 136).  On November 4, 2015, following a hearing, the ALJ found that Plaintiff was not disabled (Tr. 36). On January 18, 2017, SSA's Appeals Council denied Plaintiff's request for review (Tr. 1-14).  Thus, Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.

### B.  The ALJ's Findings

After considering the entire record, the ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2017.

2.    The claimant has not engaged in substantial gainful activity since August 14, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: fibromyalgia; osteoarthritis; carpal tunnel syndrome; anxiety; depression; mild degenerative disc disease; right shoulder bursitis; obesity (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform unskilled light work as defined in 20 CFR 404.1567(b).  Specifically, the claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand, and walk for 6 hours each per 8-hour workday, with

a brief postural adjustment every hour for 5 minutes at [her] workstation without getting off task. The claimant is able to push and pull as much as she can lift and carry. The claimant can occasionally climb ramps and stairs but can never climb ladders and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant is able to maintain concentration, persistence, and pace for low-level detailed tasks over a normal workday with appropriate breaks. The claimant can have frequent interaction with supervisors, co-workers, and the public.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on February 7, 1962 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from August 14, 2012, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 20, 21, 23-24, 34-36).

### C. Relevant Facts

#### 1. Plaintiff's Age, Education, and Past Work Experience

At the time of the hearing before the ALJ on September 8, 2015, Plaintiff was 53 years old, which is defined as an individual closely approaching advanced age, with an alleged onset disability date of August 14, 2012.  20 CFR 404.1563.  She has past relevant work as a stock clerk, an unskilled, heavy exertion position, and as a produce manger, a skilled, medium exertion position [Tr. 72].  She has a twelfth grade education [Tr. 47].

#### 2. Plaintiff's Testimony and Medical History

The ALJ thoroughly and adequately discussed Plaintiff's medical history and her testimony at the hearing in his decision.  The Court will discuss Plaintiff's medical history and testimony only as necessary to discuss the issues raised in this case.

### III. Analysis

#### A. Standard of Review

To establish disability under the Social Security Act, a claimant must establish she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled.  20 C.F.R. § 404.1520. The following five issues are addressed in order:  (1) if the claimant is engaging in substantial gainful activity she is not disabled; (2) if the claimant does not have a severe impairment she is

not disabled; (3) if the claimant's impairment meets or equals a listed impairment she is disabled; (4) if the claimant is capable of returning to work she has done in the past she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which she can perform considering her age, education and work experience. *Richardson v. Sec'y, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389 (1971); *Landsaw v. Sec'y, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

## B. Discussion

Plaintiff presents three issues for review: (1) whether substantial evidence supports the ALJ's evaluation of the opinion of Plaintiff's treating physicians; (2) whether substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints; and (3) whether substantial evidence supports the ALJ's evaluation of the opinion of Plaintiff's counselor.

### 1. Whether Substantial Evidence Supports the ALJ's Evaluation of The Opinion of Plaintiff's Treating Physicians

Plaintiff asserts that the ALJ erred in not giving controlling weight to the opinions of her treating physicians, Dr. Thomasson and Dr. Capps. The Regulations require an ALJ to "evaluate every medical opinion" regardless of its source. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, not every medical opinion is treated equally, and the Regulations describe three classifications for

acceptable medical opinions: (1) nonexamining sources; (2) nontreating sources; and (3) treating sources.  A nonexamining source is "a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." 20 C.F.R. §§ 404.1502, 416.902.[1]  A nontreating source is described as "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." *Id.*  Finally, the Regulations define a "treating source" as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Id.*; *accord Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

An ALJ is required to give a treating source's medical opinion "controlling weight" if: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007).  If the ALJ does not give a treating source's opinion controlling weight, she must determine the appropriate weight to give the opinion based on the length, frequency, nature, and extent of the treatment relationship; the treating source's area of specialty; and the degree to which the opinion is consistent with the record as a whole and is

---

[1] The Social Security Administration revised its rules regarding the evaluation of medical evidence.  82 Fed. Reg. 5844-01, 2017 WL 168819.  The revised regulations went into effect on March 27, 2017, *id.*, and are not applicable to this case.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law.  Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.").

supported by relevant evidence. *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6)); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citations omitted). A failure to give "good reasons," or a failure to determine the degree of deference owed to a non-controlling treating source opinion, "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record," and requires remand. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)).

Plaintiff argues initially that the ALJ erred in evaluating the opinion of Richard Thomasson, M.D., one of her treating physicians. The ALJ considered both the treatment record from the doctor (Tr. 21-28) as well as the doctor's opinion (Tr. 33-34, citing Tr. 327-52, 402-07, 413-69). The ALJ found that the opinions provided by the doctor were due only "little weight" (Tr. 33) because they were not supported by the record as a whole and by the doctor's treatment notes (Tr. 34).

Plaintiff was treated by Dr. Thomasson from October 2012 to September 2015. Dr. Thomasson provided an opinion regarding the limits caused by fibromyalgia on December 11, 2013, and again on August 7, 2015 (Tr. 610-615). The opinions were essentially the same except the restriction on ability to walk/stand of 20 minutes at a time in 2013 was reduced to 15 minutes in 2015 (Tr. 405, 613). On forms entitled "fibromyalgia residual functional capacity questionnaire," Dr. Thomasson stated that Plaintiff was also diagnosed with osteoarthritis and GERD (gastrointestinal reflux disorder) and had a good prognosis (Tr. 402, 610). The ALJ summarized the doctor's opinion (Tr. 33). Dr. Thomasson opined: Plaintiff had multiple

symptoms and, as a result, she would have constant interference with attention and concentration (Tr. 404, 612). She had a severe limitation in the ability to work with stress (Tr. 404, 612). She had no side effects from medications (Tr. 404, 612). She needed to walk for 10 minutes every 20 minutes (Tr. 405, 613). She would need unscheduled breaks, and could occasionally lift less than 10 pounds (Tr. 406, 614). She would also be absent from work on average more than three times per month. (Tr. 407, 615).

Plaintiff argues the ALJ's dismissal of Dr. Thomasson's opinions is error because the ALJ failed to appreciate that pain caused by fibromyalgia cannot be assessed by objective medical findings; for example, normal physical findings such as normal range of motion are not helpful in assessing pain caused by fibromyalgia. The problem with this argument is that Plaintiff also had many other physical impairments which the ALJ found were severe: osteoarthritis, carpal tunnel syndrome, mild degenerative disc disease, shoulder bursitis, and obesity (Tr. 20). The ALJ must evaluate all of these impairments, and need not abandon the evaluation of objective medical evidence merely because one of Plaintiff's diagnoses is fibromyalgia. The ALJ did find that Plaintiff's fibromyalgia constituted a severe impairment, and he considered other factors besides objective medical findings in assessing pain caused by it. The Court notes that the ALJ's decision would have been clearer had he expressly noted that the level of pain cause by fibromyalgia could not be assessed based on range of motion, physical strength and other objective physical measurements. However, to the extent that this omission may be considered error, the Court finds it is harmless given that the ALJ did indeed consider other factors such as medication, activities, and the claimant's credibility in assessing her pain levels.

Plaintiff faults the ALJ for mentioning that "[o]n many occasions, despite the claimant's complaints of pain, the only medication prescribed by Dr. Thomasson was Phentermine, a stimulant which acts as an appetite suppressant" (Tr. 34). Pl.'s Br. at 19. Plaintiff contends the ALJ misread the record, believing that Plaintiff only took this one medication. *See* Pl.'s Br. at 21. Plaintiff's interpretation of the ALJ's decision is incorrect and mistakenly relies on reading the sentence at issue in isolation. In the prior sentence, the ALJ mentioned that the doctor also prescribed an anti-inflammatory medication, Meloxicam (Tr. 34). Further, on the prior pages, the ALJ detailed numerous other medications (Tr. 21-33). For instance, in one portion of the decision the ALJ said: "The claimant was prescribed Prevacid and Cipro. The claimant continued to follow up on a monthly basis with Dr. Thomasson who continued her on medications including Gabapentin, Meloxicam, Acyclovir, Premarin, Prevacid, Seroquel XR, Bentyl, Septra DS, Phentermine, Ultram, Neurontin, and Cymbalta." (Tr. 27). To the extent that Plaintiff intends to characterize the ALJ's decision as reflecting a belief that the doctor prescribed only this one medication, this characterization is incorrect. There were many occasions on which the weight loss drug *was* the only one the doctor renewed (Tr. 414, 434, 438, 442, 446, 450, 452). The ALJ was aware that Plaintiff had other prescriptions, but the sentence at issue was factually correct. The intent here was consideration of what the ALJ described as "conservative medications" (Tr. 34), and that is a finding the ALJ is permitted to make. Conservative treatment can be a "good reason" for discounting a doctor's opinion. *See Kepke v. Comm'r of Soc. Sec.*, No. 15-1315, 2016 WL 124140, at *5 (6th Cir. Jan. 12, 2016) ("The ALJ noted that the records indicate Kepke received only conservative treatment for her ailments, a fact which constitutes a "good reason" for

discounting a treating source opinion.").

The ALJ spent multiple pages discussing the record before reaching the conclusion that Plaintiff received only conservative treatment for fibromyalgia. For instance, the ALJ mentioned Plaintiff's conservative treatment regimen while reviewing specific parts of the treatment record (Tr. 24-25, 28, 29). The ALJ need not repeat the prior analysis when explaining the weight given to the opinion of Dr. Thomasson. Stating it once is sufficient. The Court may look to the entire decision for the ALJ's analysis of the treating physician opinion. *See e.g., Hernandez v. Comm'r of Soc. Sec.*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016) (ALJ rejected the MSS [medical source statement], determining that it was not supported by the objective medical evidence in the record, "as discussed above."). *See also Forrest v. Comm'r of Social Sec.*, 591 Fed. App'x. 359, 366 (6th Cir. 2014) ("here the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three"); *Bledsoe v. Barnhart,* 165 Fed. App'x. 408, 411 (6th Cir.2006) (looking to findings elsewhere in the ALJ's decision to affirm a step-three medical equivalency determination, and finding no need to require the ALJ to "spell out every fact a second time.")

The ALJ found that the restrictions the doctor provided were inconsistent with the treatment record (Tr. 34). The ALJ previously summarized and documented consideration of these records. For instance, the ALJ considered that, on her date of alleged onset, the doctor found normal gait among other findings, and that she needed to return in a month (Tr. 25, 341-42). The ALJ commented that, after some treatment with Dr. Thomasson, Plaintiff was seen for physical therapy, but was discharged for noncompliance (Tr. 26, 307). The ALJ considered Plaintiff's

treatment with Dr. Thomasson in early 2013, the prescriptions for various medications, and the lumbar MRI that showed only mild to moderate findings (Tr. 26, 347).

The ALJ considered Plaintiff's treatment with Dr. Thomasson in the remainder of 2013 as well (Tr. 27). She had essentially normal examinations and was prescribed many medications as noted by the ALJ (Tr. 27, 381-97, 457-68). Continuing, the ALJ considered Plaintiff's treatment with the doctor in 2014 and 2015 as well, noting normal examinations and treatment with trigger point injections and medications (Tr. 28, 413-56, 631-40). The ALJ's analysis of a treating physician's opinion may cite inconsistencies in the evidence, but the ALJ need not refer again to specific inconsistencies again when those were listed earlier in the decision. *See e.g., Crum v. Comm'r of Soc. Sec.*, No. 15-3244, 2016 WL 4578357, at *7 (6th Cir. Sept. 2, 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.") (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)).

The Court also notes that Dr. Thomasson's treatment notes, by and large, did not indicate the degree of pain plaintiff stated she was experiencing or state whether her pain levels were getting better or worse. Generally, the treatment notes indicated the existence of pain but not the degree. (*See e.g.,* Tr. 429, 431, 433). Moreover, in both his opinions, Dr. Thomasson indicated Plaintiff experienced no side effects from the medications she was taking to address fibromyalgia and her other conditions (Tr. 404, 612). It is reasonable to conclude Plaintiff's pain was being sufficiently addressed with her medications, which were not causing her difficult side effects.

12

Plaintiff also argues that the ALJ failed to evaluate opinion evidence from Raymond Capps, M.D., a neurologist who treated her. Plaintiff apparently is referring to a "disability certificate" provided to a private insurance carrier (Tr. 207). While the ALJ did not discuss specific consideration of this document, this omission does not require remand because the certificate pertains only to a conclusion on disability, an issue reserved to the Commissioner. The ALJ showed full consideration of Plaintiff's treatment with Dr. Capps. The ALJ noted that Plaintiff was seen by Dr. Capps upon referral from Dr. Thomasson, and the ALJ described this care (Tr. 26, 309-21). While it is correct that Dr. Capps provided a disability certificate, which was entered into the record as part of the non-medical evidence, this is merely a conclusory form stating that Plaintiff was permanently disabled for the purposes of a union pension fund (Tr. 207). A doctor's conclusion that a patient is disabled from all work may be given consideration, but could "never be entitled to controlling weight or given special significance" because it may invade the ultimate disability issue reserved to the Commissioner. SSR 96–5p ("Medical sources often offer opinions about whether an individual . . . is 'disabled' or 'unable to work [.]' . . . Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner."); *see also* 20 C.F.R. § 404.1527(a), (d). Any failure to mention this evidence is harmless error since the certificate was of little value under the regulations. *See Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 432 (6th Cir. 2016) ("But the ALJ's failure to explicitly consider Dr. Kolinski's opinion was, at most, harmless error because the ALJ indirectly rejected the conclusion that Dutkiewicz was unable to work by reasonably explaining that the majority of medical evidence, the nature of Dutkiewicz's treatment, and the other medical opinions in the

record showed that Dutkiewicz had the capacity to perform a limited range of sedentary work.").

Plaintiff also argues that the ALJ gave great weight to the opinion of a consulting examining physician, Stephen Goewey, M.D., but that the ALJ did not explain how this opinion was consistent with evidence in the record. (*See* Pl.'s Br. at 27, citing Tr. 32, 365). Dr. Goewey examined Plaintiff on a consultative basis in April 2013. He assessed fibromyalgia, lumbago, and alleged colitis (Tr. 367). The doctor opined that "no restrictions are endorsed at this time" based on the history, normal physical findings, and limited medical records supplied (Tr. 368). The ALJ considered the examination (Tr. 26-27), and cited this examination as generally unremarkable and representative of mild findings (Tr. 29). The opinion was given significant weight, and, in particular, the ALJ noted that Plaintiff had only provided "variable effort" according to the doctor (Tr. 32, 366).

It is noteworthy that the ALJ considered this doctor's opinion that Plaintiff had "no restrictions"; however, the ALJ did not adopt that opinion. Rather, the ALJ afforded Plaintiff much greater limitations, finding that she was only able to perform a reduced range of light work (Tr. 32). While this report was given "great weight," it was not accepted *in toto* and did not form the basis of the residual functional capacity since the ALJ did give Plaintiff restrictions. The Court acknowledges that the doctor's "normal" examination results could provide no basis to assess pain caused by fibromyalgia; however, Dr. Goewey also made his assessment based on medical records provided to him. The Court concludes the ALJ properly considered Dr. Thomasson's, Dr. Capps' and Dr. Goewey's opinions.

## 2. Whether Substantial Evidence Supports the Administrative Law Judge's Evaluation of Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in the evaluation of her subjective complaints. In evaluating a claimant's complaints of disabling pain, the ALJ engages in a two-step process:

> First, the ALJ should determine whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain. Second, the ALJ should evaluate the severity of the alleged pain in light of all relevant evidence, including the factors set out in 20 C.F.R. § 404.1529(c).

*Kendrick v. Astrue*, 886 F. Supp.2d 627, 638 (S.D. Ohio 2012) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1039-41 (6th Cir. 1994)); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Factors to consider when evaluating subjective symptoms such as pain include,

> the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Rogers*, 486 F.3d at 247; *see also* 20 C.F.R. § 404.1529(c). These factors are especially important where the claimant alleges disability in part or in whole due to fibromyalgia, because "fibromyalgia is not susceptible of objective verification through traditional means." *Rogers*, 486 F.3d at 245. Rather, as the Sixth Circuit has explained,

> unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs. *See Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir.1988) (per curiam) (noting that objective tests are of little relevance in determining the existence or severity of fibromyalgia); *see also Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 990 (N. D. Ohio 2003) (observing that "[f]ibromyalgia is an 'elusive' and 'mysterious' disease" which causes "severe musculoskeletal pain"). Rather, fibromyalgia patients "manifest normal muscle strength and neurological reactions and have a full range of motion." *Preston*, 854 F.2d at 820. The process of diagnosing fibromyalgia includes (1) the

testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.*; *Swain*, 297 F.Supp.2d at 990.

*Rogers*, 486 F.3d at 245-46. The ALJ considered these various factors and found that Plaintiff's lack of credibility was supported by her conservative treatment, history of non-compliance, and wide ranging activities of daily living (Tr. 34). The evaluation of Plaintiff's alleged symptoms rests with the ALJ, and "[a]s long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012). Plaintiff specifically complains that the ALJ should not have found that she had "conservative" medical treatment. (*See* Pl.'s Br. at 28, citing Tr. 28). The ALJ considered Plaintiff's care on multiple occasions in the record (Tr. 24, 28, 29, 32) and concluded that it was conservative.

An ALJ may consider the treatment an individual has had and whether the treatment is indicative of disability. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 473 (6th Cir. 2014). Modest treatment is "inconsistent with a finding of total disability." *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (treatment consisted "solely of pain medication"). Plaintiff's arguments to the contrary merely call for an alternative conclusion based on the same evidence. "Peterson undeniably has pointed to pieces of evidence in the record that indicate that he might be disabled . . . . Merely marshalling evidence to suggest that he is disabled, however, is insufficient; to prevail on appeal, Peterson must demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence." *Peterson v. Comm'r of Soc. Sec.*, 552

F. App'x 533, 540 (6th Cir. 2014). The ALJ noted that plaintiff had not seen a pain management specialist, and that she had had minimal visits to her rheumatologist, Dr. Steigelfest, who specializes in the treatment of conditions such as fibromyalgia. She had not been hospitalized or sought emergency care for pain, and she had not followed the consistent recommendations of Dr. Steigelfest to exercise, engage in physical therapy, and lose weight.

Plaintiff also argues that the ALJ improperly evaluated and relied on her activities of daily living. *See* Pl.'s Br. at 30, citing Tr. 29. However, the ALJ may consider daily activities as one factor in the evaluation of subjective complaints (Tr. 29). *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("Further, the ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."); *see also* 20 C.F.R. § 404.1529. At a May 2013 examination, Plaintiff reported she could manage her medications with no difficulty, could make simple meals and do simple chores at home. She drove herself to the doctors and occasionally picked up a grandchild from school. She occasionally went out with friends and attended church. Her hobbies included working puzzles, coloring, and watching TV. (Tr. 373-74). Her doctors encouraged her to be more active (Tr. 26, 354 ("Encouraged swimming, outside activities that give her pleasure.")). While these activities are not dispositive as to the issue of whether Plaintiff can engage in substantial gainful activity, they tend to indicate she can do more than she has asserted.

Plaintiff also argues that the ALJ should not have considered her non-compliance with treatment. *See* Pl.'s Br. at 33. The Court disagrees. The ALJ properly considered many examples

of noncompliance (Tr. 24-29). Plaintiff was discharged from physical therapy for non-compliance (Tr. 26, 307). She failed to appear for mental health treatment (Tr. 29, 482 ("… erratic compliance with therapy.")). She improperly took her medications (Tr. 32, 538) ("indicated that she is mixing the alcohol w/ muscle relaxants and other pain meds Rx by her rheumatologist and other specialists. And sometimes also taking more than Rx dose of these meds."). She did not engage in the recommended aerobic exercise (Tr. 421). An ALJ may use a claimant's non-compliance with treatment as a credibility factor. *See Ranellucci v. Astrue,* No. 3:11-cv-00640, 2012 WL 4484922, *10 (M.D. Tenn., September 27, 2012) (finding noncompliance with prescribed treatment is appropriate factor with which to assess claimant's credibility) (citing *Holley v. Massanari,* 253 F.3d 1088, 1092 (8th Cir. 2001)); *see also* SSR 96-7p (claimant's claims of disabling impairment "... may be less credible if … not following treatment as prescribed …").

In sum, the ALJ carefully considered numerous factors bearing on Plaintiff's credibility and concluded that her statements regarding the degree of her limitations was not credible. He then made an assessment of her limitations based on the numerous factors cited above in addition to the opinion evidence provided in this case. The ALJ sufficiently evaluated Plaintiff's subjective complaints and the Court concludes that the ALJ's decision as to Plaintiff's credibility is supported by substantial evidence.

### 3. Whether Substantial Evidence Supports the ALJ's Evaluation of the Opinion of Plaintiff's Counselor

Plaintiff asserts that the ALJ erred in evaluating the opinion of her counselor, Kathryne Shapard, who treated her at Centerstone. Ms. Shapard opined that Plaintiff would miss more than three days a month at work, and that her physical symptoms along with her psychiatric symptoms

would cause an inability to function on the job (Tr. 411). The ALJ found this assessment to be inconsistent with the treatment notes (Tr. 34).

Plaintiff concedes that Ms. Shapard is not an "acceptable medical source" under the regulations in effect at the time that Plaintiff filed her application for disability (*See* Pl.'s Brief at p. 16, Doc. 16). The regulations describe "acceptable" medical sources as those who may establish whether an individual has a medically determinable impairment. *See* 20 C.F.R. § 404.1513(a) (in effect until March 27, 2017). "Acceptable" sources of medical evidence include doctors and psychologists, and in some situations optometrists, podiatrists, and speech pathologists. *See* 20 C.F.R. § 404.1513(d) (in effect until March 27, 2017). Social Security requests and evaluates opinions from acceptable medical sources, but "other" medical sources (including nurse practitioners, physician assistants, chiropractors, and therapists) may also provide opinions and evidence. *Id.* An ALJ is not held to the same standards when evaluating this type of opinion when compared to the evaluation of an opinion provided by a doctor. "[O]ther-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014). An ALJ has broad discretion when evaluating the opinion of an "other" source. *See Brown v. Comm'r of Soc. Sec.*, 591 F. App'x 449, 451 (6th Cir. 2015).

The ALJ found Ms. Shapard's opinion inconsistent with the record from Centerstone. This finding is sufficient to constitute substantial evidence for the ALJ to give little weight to Shapard's opinion. The ALJ found that, contrary to Shapard's opinion, the record indicated more favorable global assessment of functioning (GAF) ratings and documented improvement with treatment and medications (Tr. 29, 412). Shapard's opinion is contrasted with a February 2015 treatment record

showing some improvement (Tr. 495), as well as a medical progress note from March 2015 showing a fairly normal psychiatric examination (Tr. 488) and recommending a continuation of the medication regimen (Tr. 489). The ALJ properly considered (Tr. 34) that the GAF scores assessed during treatment were in the 50s (Tr. 523, 532, 542, 548, 558, 562, 575, 580, 588), while Ms. Shapard's opinion stated that the rating was 48 (Tr. 408). This represented an additional inconsistency. The ALJ also found that Shapard's opinion was inconsistent with the conservative treatment record as a whole. The ALJ specifically noted there were no emergency room visits or hospitalizations for Plaintiff's mental health. The ALJ also noted that Plaintiff had been noncompliant with treatment by failing to appear at appointments, by failing to take her medications as prescribed, and by mixing alcohol with her prescribed medications on occasions (Tr. 29, 340). The ALJ concluded that a limitation to unskilled work accommodated Plaintiff's mental health issues (Tr. 34).

Plaintiff appears to argue that SSR 06-03p required more consideration. *See* Pl.'s brief at 37-38. Specifically, Plaintiff asserts that the ALJ should have discussed Ms. Shapard's opinion in light of several factors including length and frequency of treatment, her opinion's consistency with other evidence, how well the opinion is explained, and the source's area of expertise. *Id.* However, SSR 06-03p also provides in relevant part:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. *Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision,* the adjudicator *generally should explain* the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the

> determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

(Emphasis added). The ALJ recognized Ms. Shapard's opinion and adequately explained the weight given to it. The Court concludes the ALJ properly considered the opinion of the counselor.

## IV. Conclusion

Having carefully reviewed the administrative record and the parties' briefs filed in support of their respective motions, the Court finds the decision of the Commissioner is supported by substantial evidence and shall be **AFFIRMED**. Accordingly, Plaintiff's Motion for Judgment on the Pleadings [Doc. 14] will be **DENIED**, and Defendant's Motion for Summary Judgment [Doc. 17] will be **GRANTED**. Judgment will be entered in favor of the Commissioner.

**ENTER.**

/s/ *Thomas Phillips*
THOMAS PHILLIPS
UNITED STATES DISTRICT JUDGE